IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

VILLA HEALTH CARE, INC., an )
Illinois not-for-profit corporation, )
                                     )
          Plaintiff,                 )
                                     )
          v.                         )     No.  12-3205
                                     )
ILLINOIS HEALTH CARE                 )
MANAGEMENT II, LLC, a Missouri       )
limited liability company,           )
                                     )
          Defendant.                 )

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter is before the Court on Plaintiff's Motion for Judgment

on the Pleadings (Motion) (d/e 6).  Because the Court agrees with

Plaintiff's interpretation of the contract at issue, the Court grants

Plaintiff's Motion and Declaratory Judgment is entered in Plaintiff's

favor.

I.  BACKGROUND

On August 2, 2012, Plaintiff, Villa Health Care Management, Inc.

(Villa), filed a Complaint seeking a declaratory judgment that Villa's

Management Agreement with Defendant, Illinois Health Care

Management II, L.L.C. (IHCM), would expire by its terms on September

30, 2012.  See d/e 1.

The Complaint alleges as follows.  Villa is an Illinois not-for-profit

corporation that owns and operates a shelter care facility and a skilled

nursing facility in Sherman, Illinois.  IHCM is a Missouri corporation

that was employed by Villa to manage Villa's Sherman facilities.

IHCM has managed Villa's facilities since 1991.  In 2009, the

Parties entered into the contract (the 2009 Agreement) at the center of

this dispute.  The Parties were operating under the 2009 Agreement at

the time Villa filed its Complaint for declaratory judgment.

The 2009 Agreement provided for IHCM to manage Villa's

facilities for a three-year term and laid out the various duties and

obligations of the Parties.  At issue in this case is Section 2.1 of the 2009

Agreement, which reads as follows:

> Section 2.1  Term.  The term of this Agreement shall
> commence as of October 1, 2009 at 12:01 a.m. (the
> "Commencement Date") and shall continue through
> September 30, 2012.  Owner shall establish annual

performance goals in the Budgets (as hereinafter defined) for Manager to meet during Owner's fiscal year and provided Manager meets such annual performance goals, Owner and Manager shall renew the Management Agreement in a form substantially similar to this Agreement each year through September 30, 2012.  Notwithstanding the foregoing, this Agreement may sooner terminate pursuant to the provisions of Article V hereafter.

The 2009 Agreement also has a choice of law provision in Section 12.4 that states Illinois law governs the contract.  Section 12.9 of the Agreement contains a merger clause which states "this Agreement evidences the entire agreement of the parties hereto with respect to the subject matter hereof.  Any amendments or modifications of this Agreement shall not be effective except in writing executed by all of the parties hereto."

The Court held oral argument on the Motion on June 14, 2013.

## II.  JURISDICTION AND VENUE

The court has subject matter jurisdiction based upon the diversity of the Parties and because the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a).  Personal jurisdiction and venue requirements are satisfied because the relevant acts occurred in this judicial district.

See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (personal jurisdiction exists where a corporation "purposefully avail[ed] itself of the privilege of conducting activities" in the forum State); see 28 U.S.C. §1391(b)(2) (venue is proper where a substantial part of the events or omissions giving rise to the claim occurred).

## III.  LEGAL STANDARD

"Under Federal Rule of Civil Procedure 12(c), 'a party can move for judgment on the pleadings after the filing of the complaint and answer.'" Monumental Life Ins. Co. v. Illinois Mutual Life Ins. Co., 2012 WL 5845631, at *1 (N.D. Ill. Nov. 19, 2012) (quoting Supreme Laundry Serv., LLC v. Hartford Cas. Ins. Co., 521 F.3d 743, 746 (7th Cir. 2008). The Seventh Circuit has stated that for the purposes of Rule 12(c), "[t]he pleadings include the complaint, the answer, and any written instruments attached as exhibits."  Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998).

In evaluating a motion for judgment on the pleadings brought pursuant to Rule 12(c), a court employs the "same standard that applies

when reviewing a motion to dismiss for failure to state a claim under Rule

12(b)(6)." <u>Buchanan-Moore v. Cnty. of Milwaukee</u>, 570 F.3d 824, 827

(7th Cir. 2009). "Like Rule 12(b) motions, courts grant a Rule 12(c)

motion only if 'it appears beyond doubt that the plaintiff cannot prove

any facts that would support his claim for relief.'" <u>Craigs, Inc. v. General</u>

<u>Elec. Capital Corp.</u>, 12 F.3d 686, 688 (7th Cir. 1993) (quoting

<u>Thomason v. Nachtrieb</u>, 888 F.2d 1202, 1204 (7th Cir. 1989)). When

considering the motion, all reasonable inferences must be made in favor

of the non-moving party. <u>Ogden v. Atterholt</u>, 606 F.3d 355, 358 (7th

Cir. 2010). "Claims that raise a pure issue of contract interpretation may

be resolved by motions for judgment on the pleadings because the

construction of a written contract is a matter of law." <u>Land of Lincoln</u>

<u>Goodwill Industries, Inc. v. PNC Financial Service Group</u>, 2013 WL

2446375, at *5 (C.D. Ill. June 5, 2013) (citing <u>Asta, LLC v.</u>

<u>Telezygology, Inc.</u>, 629 F.Supp.2d 837, 842 (N.D. Ill. 2009).

Further, if matters outside the pleadings are presented to and not

excluded by the court, the motion must be treated as one for summary

judgment.  Fed.R.Civ.P. 12(d).  The Court may, however, "properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint . . . without converting the motion into one for summary judgment."  <u>Lamarche v. Metro. Life Ins. Co.</u>, 236 F. Supp. 2d 50, 54 (D. Me. 2002) (citing <u>Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.</u>, 228 F.3d 24, 32 (1st Cir. 2000)).

## IV.  ANALYSIS

A.     Principals of Contract Interpretation Under Illinois Law

The 2009 Agreement is governed by Illinois law.  Under Illinois law, when construing a contract, "the primary objective is to give effect to the intention of the parties."  <u>Thompson v. Gordon</u>, 241 Ill. 2d 428, 441 (Ill. 2011).  This requires looking to the language of the contract as a whole.  <u>Id.</u>

Courts in Illinois follow the "four corners" approach, in which the court "initially looks to the language of a contract alone."  <u>Air Safety, Inc. v. Teachers Realty Corp.</u>, 185 Ill. 2d 457, 462 (1999) (citing <u>Rakowski v. Lucente</u>, 104 Ill. 2d 317, 323 (1984)).  If the contractual language is

unambiguous, then the court will not look to parol evidence, but will interpret the contract according to its plain meaning.  Camico Mut. Ins. Co. v. Citizens Bank, 474 F.3d 989, 993 (7th Cir. 2007).  "An instrument is ambiguous only if the language used is reasonably or fairly susceptible to having more than one meaning, but it is not ambiguous if a court can discover its meaning simply through knowledge of those facts which give it meaning as gleaned from the general language of the contract."  Bourke v. Dun & Bradstreet Corp., 159 F.3d 1032, 1036 (7th Cir. 1998).

Extrinsic evidence may not be considered if the contract is facially unambiguous and contains an integration clause.  Air Safety, Inc., 185 Ill. 2d at 463 (where the court refused to consider parol evidence to show that a facially unambiguous contract was ambiguous when the contract contained an explicit integration clause).  If the court finds the contract ambiguous on its face, however, the court can consider extrinsic evidence to determine the parties' intent.  Thompson, 241 Ill. 2d at 441.

Further, under Illinois contract law, a written agreement "must be

presumed to speak the intention of the parties who signed it.  It speaks

for itself, and the intention with which it was executed must be

determined from the language used.  It is not to be changed by extrinsic

evidence."   Air Safety, Inc., 185 Ill. 2d at 462 (quoting Western Illinois

Oil Co. v. Thompson, 26 Ill. 2d 287, 291 (1962); see also Pecora v.

Szabo, 94 Ill. App. 3d 57, 63 (1981) ("[I]f the contract imports on its

face to be a complete expression of the whole agreement, it is presumed

that the parties introduced into it every material item[.]").  Moreover, in

interpreting Illinois law, the Seventh Circuit has stated that, while not

dispositive,  "a merger clause is strong evidence that the parties intended

the writing be the complete and exclusive agreement between them."

L.S. Heath & Son v. AT & T Info. Sys., Inc., 9 F.3d 561, 569 (7th Cir.

1993).

B.      There is No Ambiguity in Section 2.1 of the 2009 Agreement

        The dispute in this case centers on the meaning of Section 2.1 of

the 2009 Agreement.  As stated, Section 2.1 states as follows:

        Section 2.1  Term.  The term of this Agreement shall
        commence as of October 1, 2009 at 12:01 a.m. (the

"Commencement Date") and shall continue through
September 30, 2012.  Owner shall establish annual
performance goals in the Budgets (as hereinafter defined) for
Manager to meet during Owner's fiscal year and provided
Manager meets such annual performance goals, Owner and
Manager shall renew the Management Agreement in a form
substantially similar to this Agreement each year through
September 30, 2012.  Notwithstanding the foregoing, this
Agreement may sooner terminate pursuant to the provisions
of Article V hereafter.

Villa and IHCM both claim that this provision is unambiguous on

its face.  However, the Parties set forth very different interpretations of

what the language in Section 2.1 of the 2009 Agreement means.  The

Court notes that Illinois' Supreme Court has stated that "a contract is

not rendered ambiguous merely because the parties disagree on its

meaning."  Thompson v. Gordon, 241 Ill.2d 428, 443 (2011).

Specifically, Villa contends that the performance goal language in

the 2009 Agreement is only mentioned in regard to renewal of the 2009

Agreement each year through September 30, 2012, with the agreement

terminating on September 30, 2012.  IHCM, by contrast, reads the

provision as automatically extending the 2009 Agreement beyond the

September 30, 2012 termination date if IHCM achieves the goals

specified in the annual budgets.

Moreover,  IHCM maintains that the September 30, 2012 date in the renewal provision was intended to limit the number of annual reviews, not as the final termination date.  Under IHCM's interpretation, if IHCM met the budget goals for the 2010 budget year, then an agreement with a fresh three-year term would be executed on or about October 1, 2011, moving the termination date to September 30, 2014. According to IHCM, "[t]his measurement process was to continue through September 30, 2012, at which time any further measurements against a prior year's approved budget would cease and the then existing Management Agreement would continue for its remaining term and only be extended upon an agreement of the parties and not automatically by operation of the management agreement."

IHCM's reading of this provision directly contradicts the plain language of Section 2.1 which clearly states the intended end date of the contract, not once, but twice.  The language in Section 2.1 indicates the Parties' intent that the contract end by its own terms on September 30,

2012, regardless of whether IHCM met the budget goals.

Furthermore, if the Court accepted IHCM's position that the 2009 Agreement would automatically be renewed if IHCM met performance goals, the contract could potentially extend indefinitely.  Additionally, under IHCM's interpretation, IHCM could miss the budget goals for the first two years of the contract but earn a three-year automatic extension of the contract by meeting its goal in the third year of the 2009 Agreement.

IHCM's reading essentially asks this Court to rewrite Section 2.1. However, the 2009 Agreement states nothing on its face regarding automatic renewal.

Villa's suggested reading, by contrast, gives meaning to every term of Section 2.1.  Under Villa's reading of the 2009 Agreement, the contract commenced on October 1, 2009 and was for a three-year term to end on September 30, 2012, provided IHCM met the budgetary goals each year.  Villa's reading is supported by the language in Section 2.1.

Accordingly, the Court finds that Section 2.1 unambiguously states

the 2009 Agreement terminated by its own terms on September 30,

2012, and the Court declines to consider any parol evidence offered by

IHCM.

## IV.  CONCLUSION

For the reasons stated, Villa's Motion for Judgment on the

Pleadings (d/e 6) is GRANTED.  The 2009 Agreement expired on

September 30, 2012.  This conclusion renders IHCM's Counterclaim (see

d/e 3), which seeks an order that the 2009 Agreement was automatically

extended through September 30, 2014 and damages for breach of

contract, MOOT.  Villa's "Counterclaim of Counter-Defendant/Counter-

Plaintiff" (d/e 5, at pages 7 through 20) remains pending.

ENTER: July 24, 2013

FOR THE COURT:

                    s/Sue E. Myerscough
                    SUE E. MYERSCOUGH
                    UNITED STATES DISTRICT JUDGE